Filed 9/16/25  P. v. Rivera CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064236 |
| v. | (Super. Ct. No. 21CF2877) |
| JOHNNY RIVERA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed as modified.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Johnny Rivera appeals after a jury convicted him of first degree burglary and unlawful driving of a vehicle. He challenges the sufficiency of the evidence supporting his burglary conviction and argues the trial court miscalculated his presentence custody credits. We reject the former but agree with the latter. Accordingly, we modify the judgment to reflect Rivera is entitled to 968 days of presentence conduct credits for a total of 1,936 days of presentence credits. In all other respects, we affirm.

FACTUAL AND PROCEDURAL HISTORY

I.

PROSECUTION EVIDENCE

P.D. lived in an apartment on the top floor of a four-story apartment complex in Santa Ana. A gated parking garage accessible to residents only was located on the first floor of the complex. Residents had assigned parking spots in the garage. P.D.'s parking spot was numbered the same as his apartment.

On September 27, 2021, when P.D. left his apartment, he locked the dead bolt and doorknob latch on his front door. He returned home with his car around 5:00 p.m. and noticed the dead bolt was unlocked but the doorknob latch was locked. Upon entering his apartment, he discovered the balcony sliding door was broken into pieces, as was an air conditioning unit he had by the sliding door. Numerous items were missing from his apartment.

P.D. called the police and filed a report. He told the police he suspected a neighbor, whom he believed lived on the same floor, may have committed the burglary. P.D. had seen the neighbor exhibiting strange or suspicious behavior on prior occasions. P.D. gave the police a physical description of the neighbor he suspected had committed the burglary. After

reporting the burglary to the police, P.D. remained in his apartment that night. The police did not come to his apartment to investigate the burglary.

Around 7:00 a.m. the next morning, when P.D. went to the parking garage to drive to work, he discovered his car had been stolen. P.D. subsequently realized the spare key fob to his car had been taken during the burglary. He called the police to report his car stolen.

Later that day, P.D. walked to a nearby restaurant for lunch. As he was walking back to his apartment, he saw his car being driven by Rivera, the neighbor whom he suspected of committing the burglary. There was another male in the passenger seat. P.D. waved and said, "'Stop.'" Rivera looked at P.D. and laughed. P.D. hit the car's windshield with his right palm, but Rivera quickly drove away. P.D. called the police again.

The next day, September 29, 2021, Detective Patrick Marshall of the Santa Ana Police Department saw P.D.'s car by a motel on First Street. The car sped away, and he lost sight of it. He subsequently learned the car had been reported stolen. Within an hour or two, Marshall saw the car again and conducted a traffic stop. The car stopped in the driveway to the parking garage for P.D.'s apartment complex. Rivera was the only person in the car. The spare key fob was in the car as the key was in the ignition. There was no evidence of forced entry into the car. Rivera was taken into custody.

Marshall interviewed Rivera twice. In the first interview, Rivera admitted knowing the car was stolen and that it was his neighbor's car. He said he got the car "from the neighborhood" and someone gave it to him. He had been driving the car for two days but was going to return the car to his neighbor.

By the second interview, Marshall was aware of the burglary of P.D.'s apartment. Rivera told Marshall he lived on the fourth floor of the

3

apartment complex (the same floor as P.D.). Rivera said someone stole the car and took stuff from one of the apartments in his building. He again admitted knowing the car was stolen, said he picked up the car by the motel, and maintained he was returning the car to his neighbor. Rivera was unsure what he was doing on the day of the burglary but believed he was visiting his girlfriend in Anaheim. Rivera said he was working construction with "Francisco" the day prior to his arrest, which was the day P.D. reported his car stolen and the day P.D. saw Rivera driving it.

The police returned P.D.'s car to him, and P.D. identified Rivera in a photographic lineup.

## II.

### DEFENSE EVIDENCE

Rivera's younger brother, C.R., was a construction general contractor in 2021. Rivera often worked for his brother. C.R. believed Rivera worked for him on September 27 and 28, 2021. C.R. told a defense investigator Rivera worked for him from 7:00 a.m. to 4:00 or 4:30 p.m. on September 27.

In talking to the police after he reported seeing Rivera driving his stolen car, P.D. stated his suspicion Rivera came from the roof through the sliding door into his apartment. P.D. thought a beer can he found on the roof might be significant and told the police about it. The police did not collect the beer can for testing.

## III.

### CHARGES, VERDICT, AND SENTENCING

In the operative amended information, the district attorney charged Rivera with first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a); count 1); unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a);

4

count 2); and receiving stolen property (Pen. Code, § 496d, subd. (a); count 3).[1] As to all three counts, the amended information alleged two factors in aggravation. (Cal. Rules of Court, rule 4.421(b)(2) & (3).) The amended information also alleged Rivera had two or more prior serious felony convictions that qualified as prior "strike" convictions under the "Three Strikes" law. (§§ 667, subds. (a), (d) & (e)(2)(A), 1170.12, subds. (b) & (c)(2)(A).) The court bifurcated the trial on the substantive offenses from the prior conviction allegations and the aggravating sentencing factors.

A jury found Rivera guilty of first degree burglary and unlawful driving of a vehicle and not guilty of receiving stolen property. In a bifurcated proceeding, Rivera admitted suffering two prior strike convictions. Rivera waived his right to a jury trial on the factors in aggravation, and the court found them true.

At sentencing, the court dismissed one of the strike priors pursuant to section 1385. The court imposed an aggregate prison sentence of 13 years 4 months comprised of 12 years on the burglary (six-year upper term doubled) and a consecutive 16-month term for the unlawful driving conviction (one-third the two-year midterm doubled). The court awarded Rivera credit for 968 days in actual custody and 145 days of conduct credits for a total of 1,113 days of presentence credits. Rivera timely appealed.

## DISCUSSION

### I.

#### SUFFICIENCY OF THE EVIDENCE

Rivera contends the evidence is insufficient to support his residential burglary conviction. We disagree.

---

[1] All undesignated references are to the Penal Code.

5

*A. Standard of Review*

"In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" [Citation.] The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence [citation] . . . [citation]. An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

*B. Substantial Evidence Supports Rivera's Residential Burglary Conviction*

A burglary conviction requires the prosecution to prove the defendant entered a building with the intent to commit grand or petit larceny or any felony. (§ 459.) Here, the jury was instructed on the elements of burglary (CALCRIM No. 1700) and the consideration to be given to evidence of Rivera's possession of recently stolen property in determining whether he was guilty of burglary (CALCRIM No. 376). Mirroring the California Supreme Court's holding in *People v. Mendoza* (2000) 24 Cal.4th 130, CALCRIM No. 376 explained to the jury possession of stolen property alone is not sufficient to support a burglary conviction, but possession may be sufficient where there is slight corroborating evidence tending to show the defendant's guilt. CALCRIM No. 376 further informed the jury the supporting evidence "need not be enough by itself to prove guilt" and the jury could consider "how, where, and when the defendant possessed the [stolen] property, along with any other relevant circumstances tending to prove his guilt of burglary."

6

Rivera contends the evidence he entered P.D.'s residence to commit a theft is circumstantial and insufficient. The Attorney General disagrees, arguing Rivera was in possession of recently stolen items and there was sufficient corroborating evidence for the jury to convict Rivera of the burglary. In an effort to counter the Attorney General's argument, Rivera asserts his explanation for his possession of P.D.'s stolen car was not proven false by the prosecution, and therefore, his possession of the stolen property was not sufficiently corroborated to prove his burglary conviction beyond a reasonable doubt. We conclude the Attorney General has the better argument.

Here, the spare key fob to P.D.'s car was taken during the burglary. Less than 24 hours after the burglary, P.D. saw Rivera driving his car and attempted to stop him. Rivera looked at P.D., laughed, and drove away. When Rivera was stopped by the police the next day, he was still driving P.D.'s stolen car and in possession of the stolen spare key fob. Rivera admitted to the police he knew the car was stolen and belonged to his neighbor. He said he obtained P.D.'s car from someone who offered it to him and he was going to return it to his neighbor.

The jury could reasonably conclude Rivera's possession of the recently stolen property and supporting evidence proved Rivera committed the burglary. From the evidence, the jury could reasonably infer Rivera broke into P.D.'s apartment, stole the spare key fob and other items, and used the key fob to later steal P.D.'s car. There was significant circumstantial evidence providing corroboration. Rivera lived on the same floor as P.D., providing Rivera access to the building. In accordance with CALCRIM No. 376, the jury could also consider Rivera's appearance in the area of the burglary and suspicious demeanor before the burglary as "other relevant circumstances."

7

P.D. was in possession of his car when the residential burglary occurred; thus, his car was not taken at the same time as the commission of the burglary. P.D.'s car was taken from a gated, locked parking garage, which only residents had access to. Rivera was seen driving the car the day P.D. reported it stolen. The spare key fob, which had been in P.D.'s apartment, was used to take the car, and was in the car when Rivera was arrested.

Rivera's unsatisfactory explanation of how he came to possess the stolen car and spare key fob was also sufficiently corroborative evidence. (*People v. Harris* (1968) 266 Cal.App.2d 426, 428, quoting *People v. Holquin* (1962) 203 Cal.App.2d 485, 487 ["'Unsatisfactory or false explanation may be sufficient corroborative evidence to connect the possessor with the theft'"].) Rivera contends his explanation that he was given the car and was going to return it to his neighbor was not refuted by the prosecution. The jury, however, was entitled to reject this explanation as false, based on the evidence. The jury could have reasonably rejected Rivera's explanation he was returning the vehicle to P.D. because Rivera drove away when P.D. tried to stop him.

Rivera's attempts to distinguish *Mendoza* are unavailing. In *Mendoza*, the California Supreme Court concluded substantial evidence supported the defendant's burglary conviction where the defendant was found in possession of stolen property the same morning the burglaries were committed. (*People v. Mendoza, supra*, 24 Cal.4th at p. 176.) The Supreme Court held the defendant's statements he had obtained the stolen items from the area where the burglary occurred was sufficiently corroborative evidence to support the burglary conviction. (*Ibid*.) While Rivera contends *Mendoza* is distinguishable because a greater period of time passed between the burglary in his case and his possession of the stolen property, we are not persuaded.

Rivera was in possession of P.D.'s stolen car within approximately 24 hours after the burglary and within hours of P.D. realizing his car had been stolen. The difference between the gap of a few hours in *Mendoza* and the gap here is not so great that a fact finder could not reasonably find Rivera guilty beyond a reasonable doubt.

Rivera relies on *People v. Bamber* (1968) 264 Cal.App.2d 625 to support his argument his suspicious demeanor and proximity to P.D.'s apartment was insufficient to support his burglary conviction. The appellate court in *Bamber* held the defendant's presence near the scene of a burglary and his possession of a set of tools were insufficient to support the burglary conviction. (*Id.* at pp. 630, 633.) However, *Bamber* is distinguishable from this case as the defendant in *Bamber* was not in possession of the stolen property whereas Rivera was in possession of the spare key fob stolen from P.D.'s apartment and in possession of P.D.'s stolen vehicle. Thus, Rivera's reliance on *Bamber* is misplaced.

A reasonable trier of fact could find Rivera guilty beyond a reasonable doubt of residential burglary. Therefore, we affirm Rivera's conviction.

## II.

### PRESENTENCE CREDITS

At sentencing, the trial court awarded Rivera credit for 968 days in actual custody but limited his presentence conduct credits to 145 days under section 2933.1. Rivera contends, and the Attorney General agrees, the court erred by limiting Rivera's presentence conduct credits under section 2933.1 and Rivera is entitled to an additional 823 days of conduct credits. We agree with the parties.

9

Because Rivera was not convicted of a violent felony as listed in section 667.5, subdivision (c), the limitation in section 2933.1 does not apply. (*People v. Kimbell* (2008) 168 Cal.App.4th 904, 908.) Instead, Rivera is entitled to a total of 968 days of presentence conduct credits under section 4019 for a total of 1,936 days of presentence credits.

Rivera requests we remand the matter to the trial court for recalculation of his presentence conduct credits and correction of the abstract of judgment. There is no need. We will order the judgment modified to reflect the correct calculation of his presentence custody credits. "[W]hen the sentence issue presented is essentially arithmetic in nature, involving no factual assessment or exercise of discretion and, in fact, will take no more than a few minutes of appellate time, it is far more economical to resolve it through the appellate process than to require the institution of a trial court proceeding." (*People v. Guillen* (1994) 25 Cal.App.4th 756, 764.)

## DISPOSITION

The judgment is modified to reflect Rivera is entitled to 968 days of presentence conduct credits under section 4019 for a total of 1,936 days of presentence custody credits. The trial court clerk is directed to prepare and forward to the Department of Corrections and Rehabilitation a certified copy of the amended abstract of judgment reflecting these modifications. In all other respects, the judgment is affirmed.


MOTOIKE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.

11